**UNITED STATES COURT OF  APPEALS**

**FOR THE FIFTH CIRCUIT**

NO. 96-50897
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee

VERSUS

ROY MARION JONES,

Defendant-Appellant

Appeal from the United States District Court
For the Western District of Texas
(A-94-CV-222-JN)

February 20, 1998

Before JOLLY, BENAVIDES and PARKER, Circuit Judges.

PER CURIAM:[*]

## I.

### Facts & Procedural History

Appellant, Roy Marion Jones, fled the United States after his April 6, 1983, indictment for conspiracy to import marijuana. Jones was captured and jailed in Colombia on July 29, 1983, where

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

he was living under an assumed name. In November, 1983, the United States sought Jones' extradition. Jones was subsequently convicted in Colombia, resulting in a term of imprisonment there. Jones' sentence in Colombia was commuted on January 22, 1988, upon condition of his leaving the country, and on November 22, 1990, he was deported to the United States and arrested upon his arrival in Miami. Jones was tried and convicted on April 25, 1991, of conspiracy to import and conspiracy to distribute marijuana. The District court sentenced Jones to consecutive five years terms for each count. Apparently, still feeling the itch to be free, Mr. Jones has filed no less than four appeals with this Court, two of which have been resolved on the merits, this being the fourth. Both of the previously adjudicated appeals presented the same or similar questions by different methods.

The first appeal in 1991 was a direct appeal from his conviction, wherein Mr. Jones argued that he was denied a speedy trial, that the evidence was insufficient to convict him and that the district court abused its discretion in sentencing him to consecutive terms. This Court determined all of those issues against Mr. Jones. *United States v. Jones*, No. 91-8399 (5th Cir. March 10, 1992)(unpublished). Thereafter, on June 11, 1992, Mr. Jones filed in the district court a Motion to Correct or Reduce Sentence, purportedly under Fed. R. Crim. P. 35, claiming that the evidence did not support his conviction and that his consecutive

2

sentences were an abuse of discretion. That motion was summarily rejected by the district court, reconsidered under the then recent Supreme Court decision in *Doggett v. U.S.*, 505 U.S. 647 (1992) and rejected again. On appeal this Court again rejected Mr. Jones' arguments finding that Fed. R. Crim. P. 35 was an inappropriate vehicle for challenging the merits of one's conviction and that the district court did not abuse its discretion in sentencing Mr. Jones to consecutive sentences. *United States v. Jones*, No. 92-8411 (5th Cir. Oct. 25, 1993)(unpublished).

On March 30, 1994, Mr. Jones filed a Motion to Vacate, Set Aside or Correct Judgment under 28 U.S.C. § 2255 claiming for the third time that his sentence was invalid and for the second time that he had been denied the right to a speedy trial. The district court denied Mr. Jones § 2255 petition. Mr. Jones appealed that denial on September 11, 1995, which appeal was dismissed for failure to pay the filing fee. *United States v. Jones*, No. 94-50679 (5th Cir. Oct. 28, 1994)(unpublished).

The fourth appeal, with which we are presently concerned, started life on August 2, 1995, as a Motion to Present New Evidence for Reconsideration. By that Motion for Reconsideration Mr. Jones presented three old issues (speedy trial, insufficient evidence to convict, and invalid sentence) and a new *Brady* issue.[2] The

---

[2]*Brady v. Maryland*, 373 U.S. 83 (1963), the landmark Supreme Court case establishing the prosecutorial duty to disclose exculpatory evidence to the defense.

3

district court dismissed Jones' Motion for Reconsideration, and this appeal followed.

On appeal this Court treated Jones' Motion for Reconsideration as a second § 2255 petition subject to the constraints of Rule 9(b) of the Rules Governing § 2255 Proceedings regarding successive petitions. *United States v. Jones*, No. 95-50715 (5th Cir. April 5, 1996). This Court held that the district court and this Court could not dismiss Jones' second § 2255 petition under Rule 9(b), because Jones' had not been given notice of the possibility of dismissal. Therefore, this Court remanded the matter to the district court so that the district court might review Jones' second § 2255 petition under Rule 9(b).

On remand the district court gave Jones notice that his second § 2255 petition might be dismissed. Thereafter, the district court found that the issues of speedy trial, sufficiency of evidence to convict and sentencing should be dismissed, because they had been previously adjudicated. Finally, the district court found that, even if Jones could show cause why he did not raise the *Brady* issue in his first § 2255 petition, no prejudice resulted from the government's alleged *Brady* violation, and therefore, Jones' second petition must be dismissed *en toto* under Rule 9(b) and *McCleskey v. Zant*, 499 U.S. 467, 489-96, 111 S. Ct. 1454, 1467-1471 (1991)(no abuse of § 2255 procedure where petitioner can show cause for failure to assert error in prior petition and prejudice from

4

alleged error).  Jones appealed the dismissal and this Court granted a certificate of appealability under the Antiterrorism and Effective Death Penalty Act on the *Brady* issue only.

## I.

## LAW & ANALYSIS

## A.

## Issues for Review

Initially, there is a question about what issues are properly before this Court.  The government argues that only the *Brady* issue is properly before this Court.  Jones argues that this Court improperly issued a certificate of appealability limiting review to the *Brady* issue, and therefore the Court also should determine whether the other three issues (speedy trial, sufficiency of evidence to convict and validity of consecutive sentences) were properly dismissed under Rule 9(b).[3]

Whether this Court should have issued a certificate of appealability or a certificate of probable cause is irrelevant. Regardless of the method used, appellate review in this case was properly limited to the *Brady* issue.  This Court on direct appeal has already determined the issues of speedy trial and sufficiency of evidence to convict. *United States v. Jones*, No. 91-8399 (5th Cir. March 10, 1992)(unpublished).  Likewise, this Court has

---

[3]Jones has made this argument twice already, and his petition for panel rehearing and suggestion for rehearing *en banc* on the COA issue were both denied.

5

already determined that Jones' sentence was appropriate by affirming the district court's denial of Jones' motion under Fed. R. Crim. P. 35. *United States v. Jones*, No. 92-8411 (5th Cir. Oct. 25, 1993)(unpublished). Therefore, the *Brady* issue is the only issue raised by Jones' second § 2255 petition that has not been previously determined by this Court on the merits.

## B.

### *Brady* Issue

The crux of Jones' argument is that the government failed to inform the defense that one of its key witnesses, Robert Nestoroff, was under investigation for conspiracy to obstruct justice and perjury with respect to criminal investigations. Since this *Brady* issue is raised in Jones' second § 2255 petition, he must survive the requirements of Rule 9(b) of the Rules Governing § 2255 Proceedings. Rule 9(b) requires the district court to determine whether second or successive § 2255 petitions raising new and different grounds for relief constitute an abuse of the procedure. Successive writs raising new and different grounds for relief are not an abuse of the procedure, if the petitioner can show cause for failing to assert the new ground for relief in the prior petition and that the alleged error prejudiced his defense. *McCleskey v. Zant*, 499 U.S. 467, 489-96, 111 S. Ct. 1454, 1467-1471 (1991).

The district court found that, even if Jones could show cause why he did not raise this issue in his first § 2255 petition, no

6

prejudice resulted from the alleged *Brady* violation, because the investigation of Nestoroff did not start until long after Jones' trial. However, in making this ruling the district court accepted the magistrate's mistaken belief that Jones' was tried in 1983. In fact, Jones was indicted in 1983, but his trial took place on April 22-25, 1991. Nestoroff was notified on September 10, 1992, that he was a target of a grand jury investigation in the Southern District of Florida. Although the district court was clearly wrong about the timing of Jones' trial in relation to the grand jury investigation of Nestoroff, there is no proof that the government knew of Nestoroff's illegal activities prior to or during Jones' trial. As the district court properly noted, *Brady* does not require the disclosure of exculpatory evidence which does not yet exist. However, the fact that the grand jury investigation of Nestoroff began less than eighteen months after Jones' conviction would at least support an inference that the government knew of Nestoroff's illegal activities well before that time and perhaps even before Jones was convicted.

Assuming that the government knew of Nestoroff's criminal activity before Jones' trial, that information would have been relevant only for purposes of impeaching Nestoroff's testimony.

> "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within th[e] general rule [of *Brady*]. We do not, however, automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence

7

> possibly useful to the defense but not likely to have changed the verdict ...'  A finding of materiality of the evidence is required under *Brady* ...   A new trial is required if 'the false testimony could ... in any reasonable likelihood have affected the judgment of the jury ...'"

*United States v. Bagley*, 473 U.S. 667, 677, 105 S. Ct. 3375, 3381 (1985), *quoting Giglio v. United States*, 405 U.S. 150, 154, 92  S. Ct. 763, 766 (1972)(citations omitted).   Therefore, assuming a *Brady* violation here, it avails Jones nothing unless Nestoroff's loss of credibility is reasonably likely to have affected the judgment of the jury against Jones.

As it turns out, a careful reading of the trial transcript reveals that Nestoroff's testimony was almost entirely redundant, and simply reiterated parts of the prior testimony of the government's key witness, Richard Braziel, the Drug Enforcement Administration Agent who headed the investigation of Jones.   In fact Nestoroff's testimony is wholly unnecessary to link Jones to the airplane carrying the drugs from Mexico.   That link was established by Braziel's voice identification of Jones as the pilot of the aircraft, which Jones abandoned upon landing in Killeen, Texas, and by the extrinsic evidence that Jones' fingerprints were found in the airplane.[4]  We cannot say that any prejudice resulted

---

[4]The facts as alleged by the government and accepted by the jury were that Jones was being investigated as part of a larger investigation of an air smuggling ring.   In early December, 1982, Agent Nestoroff used an informant in the airplane chartering business, Ayla Schbly, to acquire the right to afix a tracking device to an airplane which would then be offered to the suspected drug smugglers for use in their smuggling operation.   On

from Jones not being able to impeach Nestoroff's credibility, when Braziel's testimony alone was sufficient to establish Jones' guilt. Therefore, any error by the magistrate and district court regarding the timing of Jones' trial and the investigation of Nestoroff is harmless, given the correctness of the magistrate's finding that "even if Nestoroff's testimony had been excluded, the other evidence of guilt is more than adequate to support Jones' conviction."

## III.

## CONCLUSION

It should be exceedingly clear that the issues of speedy trial, sufficiency of the evidence to convict and consecutive sentences forever have been resolved on the merits and cannot form the basis for any subsequent motions or petitions from Jones, barring some change in the law which would entitle him to relief. Even assuming that Jones on remand could show a *Brady* violation,

---

December 18, 1982, Agent Braziel went to Gant aviation to look for the plane, only to find it was gone and that Jones' green and white pickup was parked outside Gant aviation. On the evening of December 20, 1982, the tracking device triggered an alarm at a monitoring station and the plane showed up on radar as being off the coast of Texas, inbound from Mexico. Agents alit in their own chase aircraft and began a pursuit in the dark; none of the aircraft had their lights on. Agent Braziel overheard portions of the radio conversation between the pilot of the suspect airplane and the ground crew. Braziel identified the voice of the pilot as Jones. Eventually, Braziel spoke directly with Jones, who responded to "Hey, Roy". Eventually, Jones landed the aircraft at Killeen Airport. The chase team of three aircraft landed immediately behind Jones, but by the time they reached the aircraft, Jones had abandoned it, filled to the brim with marijuana. Jones fled to Colombia. At trial, Braziel's testimony alone was sufficient to establish that Jones was the pilot of the aircraft loaded with marijuana.

that *Brady* violation would not entitle Jones to relief because Nestoroff's testimony could be impeached or excluded entirely without affecting the integrity of the verdict.  Therefore, we affirm.

AFFIRMED.